No. 5896.

## Martin Stichtd v. The State.

1. PRACTICE—EVIDENCE.—Failure of the State to make any proof of the time of the commission of the offense is fatal to a conviction.
2. SAME—SLANDER.—The information in this case sets forth the alleged slanderous words in the English language. Over the objection of the defendant, the State was permitted to prove slanderous words which were uttered by the defendant in the German language, and that the said words, interpreted, mean substantially the same as the English words alleged. *Held:* That the admission of the proof was error. The rule is, in civil cases, and *a fortiori* in criminal cases, that if the slanderous words were spoken in a foreign language they must be set forth in such language, together with a translation into English.

APPEAL from the County Court of Guadalupe. Tried below before the Hon. J. T. McKee.

The slander charged against the appellant was that he imputed a want of chastity to Christina Dolle, a female, by stating, in the hearing of several witnesses, that the said Christina Dolle was a whore, and had never done anything since she came to Texas, but acted as a whore for negroes. The penalty assessed against the appellant was a fine of one hundred dollars.

Fritz Dolle was the first witness for the State. He testified that he lived in Guadalupe county, Texas, and was the son of the Christina Dolle named in the indictment. Christina Dolle lived in Comal county, Texas. Witness knew Ferd Rotsloff and Jake Miller, but knew nothing about this case.

On his cross examination, the witness said that his mother, the said Christina Dolle, had never lived in Guadalupe county. She had lived in Comal county about thirty years, and was now about seventy-four years old. Witness did not think that defendant ever saw Christina Dolle but once, and that was at witness's house, about two years before this trial. Witness married one of the Laubar girls, and Jake Smith married the other. Jake Smith's wife, who was witness's wife's sister, before her marriage to Smith, gave birth to a child. It was a negro child, and was more black than white.

Jake Miller testified, for the State, that he lived in Guadalupe

county, on the Ireland and Pfeuffer land. Witness knew the defendant, and was present when defendant talked about Fritz Dolle's mother. Besides the witness, Ferd Rotsloff, George Stichtd and witness's little brother, were present. Defendant talked in the German language. He said: "Fritz Dolle is a son of a bitch. His mother is a negro whore; he is of bad family; he stole my double shovel plow; his mother is a negro whore; she has lived with negroes as a whore ever since she came to Texas; she has had a negro baby; he is a low down man." This occurred in Guadalupe county.

On his cross examination, the witness said that the defendant did not mention the name of Christina Dolle. He spoke of her as Fritz Dolle's mother, and made the charges against her in the words (using the German language), stated by witness on his examination in chief. Witness told Mr. Dibrell in his law office that the defendant did not say anything about Fritz Dolle's mother, and that he merely said that Fritz Dolle had married into a bad family, one of the girl members of which had given birth to a negro baby, and that said girl had whored with negroes—that Dolle had married into a low Dutch family, and that the low Dutch of Guadalupe county were liars and bad people. Witness wrote to Mr. Dibrell from San Antonio to about the same effect. But what the witness told Dibrell in Seguin, and wrote to him from San Antonio were unmitigated lies, and witness knew they were lies when he told and wrote them to Dibrell. Defendant gave witness the money to go to San Antonio on condition that he tell Dibrell, and then write Dibrell from San Antonio, that he never mentioned any name but said merely that Fritz Dolle had married into a low family, and was himself a low Dutchman. Witness's present statement was the unvarnished truth. He was a friend to neither defendant nor Fritz Dolle. Witness knew that Fritz Dolle hated defendant, because he had heard him say so. Dolle told witness that if he did not testify to defendant's statements as he had once repeated them, he would report witness for carrying a pistol. Defendant lent witness the money to go to San Antonio on condition that he would write the said letter to Mr. Dibrell. Witness's mother was to refund the money to defendant. About two weeks after this transaction witness told his mother what it was that defendant said, and which is made the basis of his prosecution. He told her just as he has testified on this stand, and not as he told and wrote it to Dibrell. Defendant never told the

witness that he must swear to a lie.    Both he and Dolle told
witness to swear to the truth.    Witness wrote a second letter to
please his mother, who, having heard defendant's statement of
the matter, believed him and disbelieved the witness, and would
"fight the witness with her tongue."    He did not sign the letter
he wrote to please his mother.    Witness here identified the let-
ter he wrote to Mr. Dibrell, which was subsequently read in evi-
dence.    Witness was sixteen years old.

Ferd Rotsloff testified, for the State, that he was present when
defendant talked about Fritz Dolle's mother.    George Stichtd,
Jake Miller and his little brother were also present.    Defendant
did not mention the name of Christina Dolle.    He said that Fritz
Dolle stole the double shovel of his plow and was a son of a
bitch; that he was of a bad family and that his mother was a
negro whore who had given birth to a negro baby, and had done
nothing but whore with negroes since she came to Texas.    This,
witness, on his cross examination, said that he was a friend to
defendant, but not to Dolle.    Witness had the defendant in-
dicted for threatening to take his, witness's, life, but that prose-
cution was dismissed.    Defendant then prosecuted witness for
an assault, and witness was convicted and paid his fine.    During
the trial of that case, defendant and Mr. Johnston got into a
fight, and witness ran up to and hit defendant on the back of
the neck, and knocked him down.    Witness pleaded guilty to
that last fighting and paid his fine.    This all happened after the
slander of Mrs. Dolle was uttered by defendant.    Witness never
formally made friends with defendant, but, having paid all
fines and costs in the proceedings against him, he considered
everything settled, and was friendly towards defendant.    Wit-
ness denied that in a trial of defendant previous to this he testi-
fied he could not understand the language spoken by defendant.
Witness did not know who Fritz Dolle married.

The State closed.

E. Masheim was the first witness for the defense.    He testified
that he was a German by birth, but could read, write and trans-
late both the English and German language.    The letter signed
"Jake Miller," and identified by said Miller as the letter he
wrote to Mr. Dibrell, was here handed to the witness, and he
translated it as follows:

*To Mr. Dibrell:*

I wish to inform you that on account of the low down affair

which has taken place between Stichtd and Dolle, I am going to leave the place here. Then I can't express how Dolle and his lawyers want it. It is true Stichtd has called Dolle the way Rotsloff says, but he never mentioned the name of Dolle's mother. I have heard it too well.

But the low down liars like Rotsloff and Dolle thought they could get me to testify like them, but I am not going to do so. Now I will write to you how they could catch me. I went fishing the Sunday after the happening at Dolle's. When I arrived Rotsloff was there and had told Dolle, his best friend, all and more with it. When I arrived there the said Dolle said to me: " Has Stichtd scolded about us?" I answered: "Yes, he has said the low down Dutch are a bad set and liars; what I have also found out myself. " I never was a friend of Stichtd and never will be, but as long as I have been here neither he nor the other two have ever put anything in our way. The worst thing for me was that I allowed myself to be prejudiced by Fritz Dolle and and F. Rotsloff against Stichtd, and they got me so far that I went with them to the county attorney, Ehringhaus, and there they got away with me, because Dolle was interpreter himself; but fortunately for me we went out of the courthouse, and I thought what they say outside don't amount to anything, and if ten witnesses would be present and I spoke then the way they wanted me to, but I can prove by all that I did not testify so in the courthouse, though Dolle and Rotsloff desired it. Stichtd has said against Dolle what Rotsloff will say, but he never has said his mother was a whore, but he said the low · Dutch had whored with niggers, and one of them had borne a nigger boy. This is my testimony.

JACOB MILLER.

Mrs. Miller, the mother of the State's witness, Jacob Miller, testified for the defense that, about two weeks after the alleged slander of Mrs. Dolle by defendant, she had a talk with her son Jake, in which Jake told her that it was not true that defendant had spoken of Mrs. Christina Dolle in the terms testified to by Rotsloff, but that defendant did say that Fritz Dolle had married into a bad family of low Dutch, one of the girl members of which had whored with negroes and had given birth to a negro child. Witness never threatened to whip Jake for repeating the statement made by defendant, or the statement circulated by Rotsloff. She did scold him for detailing the statement to suit

the sympathies of the crowd he was with. She directed him then to tell the story, if he told it at all, truthfully, and not in so many different ways. Jake was a boy of good sense.

James Greenwood testified, for the defense, that he was present on the trial of a case in which this defendant was prosecuted in the justice's court. Ferd Rotsloff was a witness in that case against defendant, and testified that he could not understand anything said by defendant, inasmuch as the language spoken by defendant was a different language to the one he spoke. He knew as a matter of fact that Fritz Dolle and Ferd Rotsloff were bosom friends. The two generally came to town together, associated constantly, and drank beer together. Dolle had stood as security for Rotsloff to witness for attorney fees.

George Stichtd, the son of the defendant, testified that he was present at the time of the alleged slander and heard all that was said. Defendant did not mention the name of Mrs. Christina Dolle, nor did he speak of Fritz Dolle's mother. He said that a man like Dolle had no right to talk about other people; that he had married into a family of which one of the girl members, after long whoring among negroes, gave birth to a negro baby. He said, also, that Fritz Dolle stole the double shovel of his plow. Defense closed.

J. C. Ehringhaus testified for the State, in rebuttal, that he was present at a former trial of this defendant before a justice of the peace, for another offense, and in which Rotsloff testified for the State. Rotsloff did not testify on that trial that he could not understand the language spoken by defendant. He testified that defendant started towards him across a field with a stick in his hand, and that he, Rotsloff, moved off; that defendant called to him to stop, which he declined to do; that defendant then said something to him which he did not understand.

The motion for new trial raised the question discussed in the opinion.

*Burges & Dibrell* and *James Greenwood,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

Willson, Judge. In the statement of facts before us there is no evidence showing the time of the commission of the alleged offense. This is fatal to the conviction, and the Assistant

Attorney General confesses the error. (Temple v. The State, 15 Texas Ct. App., 304.)

A novel question is presented in the record. In the information the alleged slanderous words are set forth in the English language. On the trial, over the objections of the defendant, the State was permitted to prove slanderous words uttered by the defendant in the German language, said words, when interpreted, meaning substantially the same as the slanderous words set forth in the information. The question presented is: When oral slander is alleged to have been committed by the use of English language, can such slander committed by the use of the German language be proved, there being no allegation that the slander was uttered in the German language? We are of the opinion that the question must be answered in the negative. In a civil action for slander, the rule is that where the slanderous words were spoken in a foreign language they must be set forth. together with a translation into English. To set forth the foreign words alone will not be sufficient. And to allege a publication of English words, and prove a publication of words in another tongue, is a variance. (Townshend on Slander, sec. 330.)

The reasons upon which the above stated rule is founded demand its application with equal if not of greater force in a criminal than in a civil prosecution for slander. In all criminal prosecutions the accused party has the right to be informed by the information, or the indictment, of the facts charged against him, so that he may prepare to meet them, and he can only be required on the trial to meet and defend against the exact matter charged against him. The allegation and the proof must meet, and substantially correspond, otherwise the accused might be convicted of a different offense than that with which he is charged, and which he had not been informed he was called upon to meet. To charge a person with uttering slanderous words in the English language certainly does not inform him that he will be required to meet and defend against words uttered by him in a different language. We hold that the court erred in permitting the State to prove the words uttered by the defendant in the German language, and that the slander as charged in the information, is materially variant from that proved.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*