## GEORGE PALAMARCHUK v. STATE.

No. A-4164.   Opinion Filed Dec. 22, 1923.
(221 Pac. 120.)

(Syllabus.)

1.   **Libel and Slander—Information for Slander—English Equivalent of Words Charged Uttered in Foreign Language Sufficient.** Giving effect to the statutory enactments modifying the common law rules of pleading, we hold that an information charging slanderous words in a foreign language need not recite the foreign words spoken, but that the English equivalent is sufficient, provided the information contains an allegation that they were spoken in a foreign language, naming it, and that the English equivalent used is a true and correct translation thereof, following the decisions in California, Missouri, and Iowa cited in the opinion.

2.   **Same—Variance.** Because the information contained no averment that alleged slanderous words were uttered in a foreign language there was a consequent variance between the information and the proof.

Appeal from County Court, Pittsburg County; S. F. Brown, Judge.

George Palamarchuk was convicted of slander in imputing unchastity to a female, and he appeals. Reversed and remanded.

J. E. Layden and Monk & McSherry, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J.   George Palamarchuk, plaintiff in error, here designated the defendant, was by information filed in the county court of Pittsburg county on March 25, 1921, charged with the offense of falsely and wantonly imputing a want of chastity to Tressa Slotta. At the trial November 17, 1921, he was found guilty as charged, with his punishment assessed at 30 days in jail and a fine of $250. From the judgment on this verdict he appeals.

The defendant was a priest in charge of a congregation of the Russian branch of the Greek Catholic Church, at Hartshorne. He was educated at the University of Odessa, spoke the English language imperfectly, and used what is known as the ''high'' Russian language, such as was spoken at the University and among the educated classes of that country, and also used some Russian dialect, commonly termed ''low'' Russian, and spoken by the common and uneducated classes of Russians of Austria, Carpathia, Galicia, and other provinces, and which was used by the members of his congregation at Hartshorne.

This prosecution grew out of a church quarrel, in which the trustees and members of the church committee wanted to have the defendant removed as the priest in charge of this church. A meeting of the committee and congregation had been called at the place of worship for the purpose of auditing the finances of the church, at which 12 or 15 members had assembled. On this day the weather was inclement, and the ground covered by about a foot of snow, on account of which the defendant announced to those assembled that no official meeting would be held. However, an informal discussion was had as to the finances of the church. The defendant had intimated that Andrew Slotta, husband of the female alleged to have been slandered, who was one of the trustees of the church, had not accounted for certain of the funds in his possession and control. Andrew Slotta, speaking in some Russian dialect, stated that the defendant made the statement he did concerning the misappropriation of church funds because Mrs. Slotta had repulsed improper advances from the defendant. When this statement was made by Slotta, the priest became angry, and in the Russian language, or some Russian dialect replied in substance that

Mrs. Slotta was a wanton, affected with a venereal disease, and had been sexually intimate with negroes, expressed in obscene and insulting terms.

The exact words used by the defendant cannot be ascertained from the record, because the different witnesses testifying for the state interpreted the expressions used by the defendant differently, but the substance and effect of the slanderous statement, as testified to, was practically the same. Several witnesses, friends of the defendant in the church controversy, testified that no such slanderous statement or imputations were uttered by him. The material part of the information was to the effect that the accused wantonly and falsely imputed to Tressa Slotta a want of chastity by the. making of the statement outlined above. There was no allegation that the statement was made in the Russian language, or any Russian dialect, and from the reading of the information, without the. aid of other parts of the record, it would appear that the slanderous words used were spoken in English. The defendant urges in this appeal that there was a variance between the allegations and the proof, and that the information was insufficient, because it did not state the slanderous words in the Russian language or dialect as spoken, with a true translation of the foreign words in the English, together with an allegation that the translation was correct.

It has been held by a long line of authorities, ancient and modern, that where the slanderous words spoken are uttered in a foreign language the words must be set out in the information in the language in which they were spoken, with a translation thereof in English added. Romano v. De Vito, 191 Mass. 457, 78 N. E. 105, 6 Ann. Cas. 731; Wormouth v. Cramer, 3 Wend. (N. Y.) 395, 20 Am. Dec. 706; Pelzer v. Benish, 67 Wis. 291, 30 N. W. 366; Kerschbaugher v. Slusser,

12 Ind. 453; Simonsen v. Herold Co., 61 Wis. 626, 21 N. W. 799. Other cases to the same effect may be found in the notes to the Romano Case in 6 Ann. Cas. 731. The cases cited are for the most part civil cases, but it has been held that the same rule would apply in a criminal case. Stichtd v. State, 25 Tex. App. 424, 8 S. W. 477, 8 Am. St. Rep. 444; 17 R. C. L. "Libel and Slander," §§ 142 and 228; section 1115, Newell on Slander and Libel, 3d Ed.

It has been held in a number of cases, where the rules of practice have changed the common-law rule, that where foreign words are alleged as slanderous it is sufficient in pleading to recite the English meaning without quoting the foreign words, with appropriate averments however, that the words were spoken in a foreign tongue. Bower v. Deideker, 38 Iowa, 418; Butts v. Long, 94 Mo. App. 687, 68 S. W. 754; Elfrank v. Seiler, 54 Mo. 134; Stevens v. Kobayshi, 20 Cal. App. 153, 128 Pac. 419. While there is no provision in our Constitution or statutes requiring that pleadings be couched in the English language, the practice is so universally established in this state that it would seem that there would be no occasion for such a provision. Even before statehood, pleadings and court records in the Five Civilized Tribes were recorded in the English language. Under our practice, both civil and criminal, it is provided that a pleading should contain a statement of facts constituting the cause of action in ordinary and concise language, disregarding any error or defect which does not affect the substantial rights of any of the parties. Sections 265, 318, 2563 and 2564, Comp. St. 1921, in which the statutory rules of pleading in civil and criminal cases are practically the same.

Giving effect to the statutory enactments just cited, we hold that an information charging slanderous words in a

foreign language need not recite the foreign words spoken, but that the English equivalent is sufficient, provided the information contains an allegation that they were spoken in a foreign tongue, naming it, and that the English equivalent used is a true and correct translation thereof, following the decisions in California, Missouri, and Iowa, cited above. By this test we find from the record here that the claim of the plaintiff in error that there was a variance between the allegations and the proof is well founded. There was no allegation in the information that the words were spoken in the Russian language, "high" or "low," or in any Russian dialect, while the proof conclusively shows that the slanderous words spoken were uttered in some Russian dialect. There was no sufficient showing in the proceedings that the words spoken were truly and correctly translated into English, and here lies the danger in framing an information, so that it appears that the slanderous words were spoken in English, and supporting it by proof that they were uttered in some foreign language or dialect.

The words as charged in the information were exceedingly obscene and repulsive in their nature, some of the words being vulgar expressions difficult to define in any language. The rule should therefore be invoked that the pleadings should state that the expressions were uttered in a foreign language, coupled with an allegation as to the true translation in English, in order that the accused might prepare to meet the issues by the use of interpreters and witnesses familiar with both languages. The accused claims further that the testimony was insufficient to support the verdict. It is difficult to conceive how a priest officiating over a religious body at a public meeting would so debase himself as to use the obscene and scurrilous language attributed to him. The evidence upon this point being conflicting,

the question of whether the defendant used the language alleged was for the jury. The annals of criminal cases often disclose that persons of high standing and position and supposedly high character are sometimes guilty of disgraceful conduct.

Because the information contained no averment that the words uttered were in a foreign language, and the consequent variance between the information and the proof, the judgment of the trial court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

MATSON, P. J., and DOYLE, J., concur.